IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN MILAN, by and through his Attorney-in-Fact, SANDRA LEE BOYD, <br><br> Plaintiff, <br><br> v. <br><br> SHENANGO PRESBYTERIAN SENIORCARE d/b/a SHENANGO ON THE GREEN; PRESBYTERIAN SENIORCARE; and CAROLINE DEAUGUSTINE, NHA, <br><br> Defendants. | 2:21-cv-1764-NR |

## MEMORANDUM ORDER

Plaintiff John Milan, by and through his Attorney-in-Fact, Sandra Lee Boyd, first filed this action in the Court of Common Pleas of Lawrence County, Pennsylvania. ECF 1-2. Plaintiff asserts a state-law negligence claim against Defendants arising from their neglect while Mr. Milan was a resident of Shenango Presbyterian Seniorcare. *Id.* at ¶¶ 73-107. Plaintiff seeks punitive damages, among other relief. *Id.* at ¶ 107.

Defendants timely removed this action to federal court claiming that: (1) federal question jurisdiction exists because of complete preemption under the PREP Act (42 U.S.C. § 247d-6d(e)); (2) federal question jurisdiction exists under the *Grable* doctrine; and (3) federal question jurisdiction exists under the Federal Officer Removal Statute (28 U.S.C. § 1442(a)(1)). ECF 1, pp. 3-27. Plaintiff opposes these grounds for removal and asks the Court to remand the case back to state court. ECF 7.

The Third Circuit recently rejected each of the grounds for removal put forth by Defendants in a substantively similar case. *See Maglioli v. Alliance HC Holdings*

*LLC*, 16 F.4th 393 (3d Cir. 2021). The Fifth Circuit and Ninth Circuit have also separately addressed these grounds and found that they do not justify removal under similar circumstances. *See Manyweather v. Woodlawn Manor, Inc.*, 40 F.4th 237 (5th Cir. 2022); *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679 (9th Cir. 2022). Just like the removing parties in those prior cases, Defendants have failed to establish that federal jurisdiction is appropriate here and therefore the Court will remand the matter to state court.

## DISCUSSION & ANALYSIS

### A.  The PREP Act does not completely preempt Plaintiff's negligence claim.

"Under the well-pleaded-complaint rule, federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Maglioli*, 16 F.4th at 406 (cleaned up). Federal preemption is "a defense to state-law claims." *Id.* Normally, "a defense of federal preemption does not provide a basis for removal because it does not appear on the face of the well-pleaded complaint." *Id.* at 407 (citation omitted). However, the "complete-preemption doctrine provides that a federal question ***does*** appear on the face of the complaint when Congress so completely pre-empts a particular area that any civil complaint raising the select group of claims is necessarily federal in character." *Id.* (cleaned up; emphasis in original). So, "[a]s applied to this case," the Court must "ask whether the PREP Act provides the exclusive cause of action for negligence claims against the nursing homes." *Id.* (cleaned up). The Third Circuit has held that it does not. *Id.* at 408-10.

That is, the PREP Act has created an exclusive cause of action, but it is for "willful misconduct," not negligence. *Id.* at 409. This willful-misconduct exception to the PREP Act's liability shield "is substantively narrow." *Manyweather*, 40 F.4th at 243. A "claim for willful misconduct under the PREP Act requires wrongful intent,

- 2 -

knowledge that the act lacked legal or factual justification, and disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit." *Maglioli*, 16 F.4th at 409 (cleaned up). This cause of action "establish[es] a standard for liability that is more stringent than a standard of negligence in any form or recklessness." 42 U.S.C. § 247d-6d(c)(1)(B).

The willful misconduct cause of action is also "procedurally narrow." *Manyweather*, 40 F.4th at 243. "Willful-misconduct claims may proceed only in the federal district court for the District of Columbia. Plaintiffs must satisfy strict standards of pleading and proof; there are special limits on damages; and defendants may immediately appeal orders denying motions for dismissal or summary judgment." *Id.* at 243-44 (citations omitted).

As such, "[w]illful misconduct is a separate cause of action from negligence." *Maglioli*, 16 F.4th at 411. And "complete preemption does not apply when federal law creates an entirely ***different*** cause of action from the state claims in the complaint." *Id.* (citation omitted; emphasis in original).

Plaintiff has only asserted one claim in the complaint—a state-law negligence claim. *See* ECF 1-2. That claim is not preempted, unless Defendants can show that it is actually a willful misconduct claim masquerading as a negligence claim. On that score, Defendants argue that "looking at the Complaint as a whole, Plaintiff's allegations meet the definition of 'willful misconduct,'" and thus the claim falls within the ambit of the PREP Act. ECF 9, p. 13. Defendants point to three categories of allegations in the complaint in support of their position. None of these allegations support removal.

First, Defendants point to Plaintiff's allegations that Shenango's conduct was "outrageous, willful, and wanton, and exhibited a reckless indifference," which Plaintiff uses to support his claim for punitive damages. ECF 9, p. 13 (citing ECF 1-

2, ¶¶ 87, 92, 106). The Third Circuit held, however, that "[e]mploying standard language for a punitive-damages request," such as a claim that the conduct was "grossly reckless, willful, and wanton," is not enough to bring the claim under the PREP Act. *Maglioli*, 16 F.4th at 411. Such language is simply consistent with the prevailing state law in Pennsylvania on punitive damages in nursing home cases. *See, e.g.*, *Scampone v. Grane Healthcare Co.*, 169 A.3d 600, 627 (Pa. Super. Ct. 2017) (holding there is a basis for punitive damages where "there was proof of systemic understaffing, the defendants' knowledge of the same and inaction in the face of it, and the defendants' employees altered patient records to reflect that care was given when it was not."); *Breslin v. Mountain View Nursing Home, Inc.*, 171 A.3d 818, 830 (Pa. Super. Ct. 2017) (holding that plaintiff's allegations that defendants were motivated by a desire to increase profits and knowingly mismanaged funds and reduced staffing levels below the level needed to provide adequate care and supervision to its patients, was enough to form a basis for punitive damages). "[I]f the punitive damages pleaded in *Maglioli* did not qualify as willful misconduct under the statutory definition in the PREP Act, [the Court] cannot conclude that [Plaintiff's] allegations here fall within the Act." *Hereford v. Broomall Operating Co. LP*, 575 F. Supp. 3d 558, 562 (E.D. Pa. 2021).

Second, Defendants cite Plaintiff's allegations that Defendants "knowingly sacrificed the quality of care received by all residents," "made a conscious decision to operate and/or manage the Facility so as to maximize revenues," and "intentionally and/or recklessly mismanaged and/or reduced staffing levels below the level necessary to provide adequate care to residents." ECF 9, pp. 13-14 (citing ECF 1-2, ¶¶ 25-36, 71, 81(d)). While these allegations are couched in terms of intentional acts, they fall short of establishing a willful-misconduct claim under the "stringent standard" set forth in the PREP Act. *Hereford*, 575 F. Supp. 3d at 561. These

allegations do not explicitly state or even imply that Defendants acted intentionally to "achieve a wrongful purpose" or "knowingly without legal or factual justification." *Id*. But not only that, Plaintiff does not "allege loss caused by the 'administration' or 'use' of COVID-19 countermeasures." *Manyweather*, 40 F.4th at 246. Indeed, none of the allegations outlined above even implicate a COVID-19 countermeasure, let alone claim that Mr. Milan's injuries were caused by the use or administration of one. Instead, these allegations relate to the operations of Shenango generally, and how those operations led to failures of care related to Mr. Milan.

Such as it is, the Court "cannot say that [Plaintiff] assert[s] willful misconduct **under the Act**, even if [he] do[es] assert willful misconduct of some kind." *Id.* (citation omitted; emphasis in original); *see also Cagle v. NHC HealthCare-Maryland Heights, LLC*, No. 21-1431, 2022 WL 2833986, at *8 (E.D. Mo. July 20, 2022) (remanding case in which "Plaintiff's Petition does not suggest that the decedent's death was causally connected to Defendants' administration or use of any drug, biological product, or device ([*i.e.*,] a covered countermeasure[]).").

Third, Defendants point to the "multiple allegations relating to Shenango's COVID[-19] infection control policies and practices and other sanitary procedures that included numerous covered countermeasures." ECF 9, pp. 7-8 (citing ECF 1-2, ¶¶ 81(a), 81(m), 88(b), 88(i), 88(aa), 90, 91, 92)). Those allegations, however, at best, allege that Defendants **failed** "to maintain an infection prevention and control program" that led to Mr. Milan contracting COVID-19, among other injuries. *See, e.g.*, ECF 1-2, ¶ 91. An alleged failure to implement countermeasures is not enough to make out a claim for willful misconduct under the PREP Act. *See., e.g.*, *Manyweather*, 40 F.4th at 246.

### B. The *Grable* doctrine does not provide removal jurisdiction.

Defendants next argue that federal jurisdiction is warranted under the *Grable*

doctrine because the case raises "significant federal issues." ECF 9, pp. 15-16. Not so.

"The *Grable* test has four parts. The federal issue must be (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Maglioli*, 14 F.4th at 413 (cleaned up). "If the federal issue meets all four requirements, federal jurisdiction is proper." *Id.* (citation omitted).

Defendants claim the test is met because the "HHS Secretary has now expressly declared that the PREP Act confers separate, independent grounds for federal question jurisdiction under the *Grable* doctrine[.]" ECF 9, p. 15. However, "[d]eference is not owed to [this] interpretation[] for the simple reason that HHS is not delegated authority under the PREP Act to interpret the scope of federal courts' jurisdiction." *Maglioli*, 16 F.4th at 403  Rather, "the scope of federal courts' jurisdiction is a legal issue that is the province of the courts, not agencies." *Id.* (citation omitted). The Court must therefore decide the issue on the merits by analyzing the allegations in the complaint.

As for those allegations, Plaintiff "properly plead[s] [the] state-law negligence claim[] without mentioning the PREP Act, so the PREP Act is not an essential element of the [Plaintiff's] state law claim." *Id.* at 413 (cleaned up). At most, the "federal issue raised by the Removing Defendants relates to their potential defense, not the claims alleged by Plaintiff." *Cagle*, 2022 WL 2833986, at *9. "As such, the federal issue is not necessarily raised." *Id.* (cleaned up).

Indeed, courts overwhelmingly agree *Grable* does not provide a basis for removal under similar circumstances to those presented here, and this Court agrees with those decisions. *See, e.g.*, *Saldana*, 27 F.4th at 689 ("The claims in the complaint are raised under California law and do not raise questions of federal law on the face

of the complaint. Glenhaven seeks to raise a federal defense under the PREP Act, but a federal defense is not a sufficient basis to find embedded federal question jurisdiction."); *Morra v. 700 Marvel Road Operations, LLC*, No. 22-627, 2022 WL 2915639, at *3 (D. Del. July 25, 2022) ("As Plaintiffs' Complaint pleaded their state-law negligence claim without mentioning the PREP Act, the PREP Act is not an essential element of the plaintiffs' state law claim and, therefore, this Court lacks federal-question jurisdiction under *Grable*." (cleaned up)); *Roeder v. Polovitch*, No. 22-1796, 2022 WL 2819118, at *4 (E.D. Pa. July 19, 2022) ("Here, Plaintiff properly [pled] her state law negligence claims without mentioning the PREP Act in her complaint. The PREP Act would only become relevant to Plaintiff's claims insofar as it provides Defendants a preemption defense.").

### C.   The federal-officer-removal statute does not provide removal jurisdiction.

Finally, Defendants argue that "removal is proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer." ECF 9, p. 16. Defendants here too miss the mark.

"The federal-officer-removal statute permits certain officers of the United States to remove actions to federal court." *Maglioli*, 16 F.4th at 404. To remove a case under that statute, a defendant must meet four requirements: "(1) the defendant must be a 'person' within the meaning of the statute; (2) the plaintiff's claims must be based upon the defendant 'acting under' the United States, its agencies, or its officers; (3) the plaintiff's claims against the defendant must be 'for or relating to' an act under color of federal office; and (4) the defendant must raise a colorable federal defense to the plaintiff's claims." *Id.* (citations omitted).

The Third Circuit has made clear that a nursing home, like Shenango, is not "acting under" the United States, its agencies, or its officers. *Id.* That's because the nursing home is a private party, not a federal actor. *Id.* And "[m]erely complying

with federal laws and regulations is not acting under a federal officer for purposes of federal-officer removal." *Id.* (cleaned up). In fact, even a private actor that is "subject to detailed regulations and whose activities are highly supervised and monitored is not acting under a federal officer." *Id.* (cleaned up). The nursing home "must show that [its] actions involve an effort to assist, or to help carry out, the duties or tasks of the federal supervisor." *Id.* at 404-05 (cleaned up). Some classic examples are a government contractor, or a community defender appointed under the Criminal Justice Act. *Id.* at 405.

As was the case in *Maglioli*, Shenango does not "assist or help carry out the duties of a federal superior." *Id.* It is not a government contractor; it does not have a close relationship with the federal government; it is not delegated federal authority; and it does not provide a service that the federal government would otherwise provide. *Id.*

Shenango argues that it was "acting under" the United States because it was forced "to comply with ongoing, detailed CMS and CDC instructions and demands" to aid the federal government's "efforts in preventing and mitigating the spread of the virus" as part of its "critical infrastructure." ECF 9, p. 17. It was in "this unique regulatory context and scheme" that Shenango "became an extension of the Federal Government and its agencies and officers, carrying out their instructions with little or no discretion of their own." *Id.* at p. 18. The problem with this argument, though, is that the Third Circuit has already rejected it. *Maglioli*, 16 F.4th at 405-06. And so has this Court. *See Boyle v. Meyer*, No. 21-694, 2021 WL 6051439, at *4 (W.D. Pa. Dec. 20, 2021) (Wiegand, J.). Federal-officer removal is not appropriate here.

\* \* \*

For these reasons, this **23rd day of August, 2022**, it is hereby **ORDERED** that Plaintiff's motion to remand (ECF 7) is **GRANTED** and this case is

**REMANDED FORTHWITH** to the Court of Common Pleas of Lawrence County, Pennsylvania, Case No. 2021-30007, for all further proceedings. The Clerk of Court is directed to mark this case, Case No. 2:22-cv-161, **CLOSED**.

                                                  BY THE COURT:

                                                  /s/ J. Nicholas Ranjan
                                                  United States District Judge